FILED

MAR **1 9** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA

In Re:  GERALD L. ROGERS #12327 ·086 :
FCI · La Tuna
        Petitioner,                    :
P0B 3000
v. Anthony Sheridan, OR 97378 :

UNITED STATES PAROLE COMMISSION :

     Respondent.                      ;

Case: 1:07-cv-00524
Assigned To : Unassigned
Assign. Date : 03/19/2007
Description: ROGERS V. US PAROLE COMMISSION

_____

### PETITION FOR WRIT OF MANDAMUS

### To Correct Violations of:

### "ADMINISTRATIVE LAW TITLE 5 USC §706(2)(A),(C)"

_____

GERALD L. ROGERS IN PRO SE

FCI LaTuna #12327-086
P.O. Box 3000
Sheridan OR 97378

RECEIVED

FEB 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

T

ISSUES PRESENTED

NOTE:  This is not a Writ of Habas Corpus for the United States
Parole Commission to Order the Petitioner's release from a
federal prison, but is exclusively a Writ of Mandamus for this
Court to (1) find that the Commission's conduct lacks statutorial
authority and therefore, be ordered to timely rule on the violations
of the Administrative Law Act Title 5 USC §706(2)(A) and (C) as
may be determined by this Court based on the following questions
of law:

1.  Whether the Commission's lack of statutorial suthority
pursuant to Title 18 United States ("in a territorial sense")
Code §5 to order and maintain the incarceration of the
petitioner was a violation of Title 5 USC §706(2)(A)?

2.  Whether the Commission's arbitrary and capricious
elimination of exclupatory witnesses, depriving the petitioner
of due process of law to accommodate ordering that the
petitioner be incarcerated for a period of 10 years based
solely on civil allegations by the Securities and Exchange
Commission - completely void of physical evidence - was a
violation of the Administrative Law Act Title 5 USC §
706(2)(C)?

3.  Whether after being apprised of the irrefutable fact
that the Commission lacks Title 18 USC §4201 et seq.,
authority to order the imprisonment of the petitioner and the
ensuing delay of over 1 year to rule on its lack of authority
is a violation  of the Administrative Law Act Title 5 USC
§706(2)(C)?

(i)

## I. PETITION FOR WRIT OF MANDAMUS

This petition for a Writ of Mandamus arises due to the United States Parole Commission's ("Commission"), "usurpation of judicial power" and its "persistent disregard for the (Title 18) Rules" and its lack of statutorial authority together with violations of Code of Federal Regulations §2.26(c). The Commission's violations evidenced herein, are all actionable pursuant to Title 5 USC §706(A)(C). Therefore, a Writ is justified to be issued as was found by the Supreme Court in **Will v. United States** 19 L Ed 2d 305, 319 as is more fully explained and supported in the petitioner's Appeal and Legal Brief filed with the Commission on June 27, 2006, attached as Exhibit 1 and incorporated herein by reference as if fully set forth as follows.

## II.  JURISDICITION

In the face of the Commission's lack of statutorial authority and its ongoing "usurpation of judicial power", jurisdiction for this Court is derived from 28 USC §1651(a) pursuant to **McClung v. Sullivan** 19 US 598 (1920).

And, as was mandated in **United States v. Bianchi** 10 L Ed 2d 652, 658, this Court has jurisdiction to review the Commission's quasi-judicial functions under the Administrative Law Act Title 5 USC §706 for violations of (2)(A) and (C).

Furthermore, the Supreme Court mandated in **United States v. Cotton** 152 L Ed 2d 860, that subject matter jurisdiction is never forfeited or waived. Therefore, because the Commission is acting outside of its title 18 USC §4201 et seq., statutorial and jurisdictional authority granted therein, the Commission's lack of jurisdiction to maintain parole conditions

and the petitioner's continued incarceration reviewable as a Title 5 USC §706 violation.

## III.  STANDARD OF REVIEW

This petition should be reviewed under the standard as set forth by the Supreme Court in **Federal Power Commission v. Pacific Power** 83 L Ed 1180, 307 US 156. In **Pacific** the Court held:

> "While an order of a Commission can be set aside due to a violation of the Administrative Law Act, the Court is without power to order how a Commission is to conduct its authority, thereafter."

Here, pursuant to the "Relief Sought", as is fully delineated below, this petitioner is not seeking an order for future habeas relief, but for an order finding that (1) the Commission does lack statutorial authority, thus (2) its continued enforcement of parole conditions and the petitioner's continued incarceration is a violation of the Administrative Law Act §706(2)(A)(C).

## IV.  FACTS

The petitioner was sentenced to 10 years in prison pursuant to U.S. v. Rogers CR82-0292 and 25 years in prison in U.S. v. Rogers 84-CR-337 to run consecutively for a total of 35 years for the alleged tax violations together with convenient mail fraud violations attached.

Pursuant to the Court's Judgment and Commitment Orders, under Title 18 USC §4205(a), after 120 months, the petitioner fell under the authority and jurisdiction of the Commission.

Therefore, because the adjudicating courts transferred all authority over to the Commission as to the petitioner's incarceration after serving 120 months, the sole controversy before this Court is the Commissions violations to 5 USC §706(2).

2.

## V. REASONS THE WRIT SHOULD ISSUE

**1. Not one word or phrase in Title 18 Codes supports that either the United States District Court or the Commission had authority to incarcerate the petitioner for the alleged violations of the federal statutes that reputedly occurred in the state of Colorado.**

Compendiously, let alone that Title 18 USC §5 and §7 deprived the Commission of statutory authority over the petitioner for violations for which the petitioner's is convicted, (1) the United States District Court for the District of Colorado by 18 USC §3231, statutorily, lacked subject matter jurisdiction. §3231 specifically designates jurisdiction for the district court of the United States, which the "1948 Amendment" to the Judicial Code as can be seen on page 283 of the Federal Civil Rules of Procedures, 2006 Edition, makes it irrefutably clear that the Colorado Court is not a district court of the United States. And, just as clear, Congress simply differentiated between the two different court systems by their spelling in upper and lower case. By law,    all United States District Courts, unless promulgated by Congress  to "possess judicial powers of a district court of the United States", derived their jurisdictional authority from the Judiciary Act of 1789 - see Appeal Brief Exhibit 2.

(2)  In addition to Title 18 USC §§5 and 7 limiting and qualifying the Commission's §4201 et seq., authority to the federal states as defined by FCrRP Rule 1(b)(9) as corroborated by Rule 54(c) "Act of Congress", the sentence on which it relies to exercise its §4201 et seq., authority was not by law an "Authorized Sentence". Because the petitioner never "plead

3.

he was never "found guilty" pursuant to §3673 as is required by the sentencing statute §3551.

Furthermore, when the Commission most recently "usurped the judicial power" of the district court of the United States to order that the petitioner be re-incarcerated for an alleged violation of a civil Securities and Exchange Commission violation, it was also bound by the jurisdiction controlling statutes of Title 18 USC § 3001, the Federal Criminal Rules.

The Commission's limitation of authority pursuant to §4201 et seq., is further explained by Rule 54(c) "Act of Congress" that the federal statutes violations for which the petitioner was convicted, were "acts of Congress locally applicable to and in force in District of Columbia, Puerto Rico, in a territory or insular possession" of the United States - and with specificity, not in the state of Colorado in which its §4201 et seq., authority does not include.

Therefore, the Commission's lack of statutorial authority pursuant to the Title 18 USC §5 and §7 limiting and qualifying its authority over the petitioner for the federal statutes violated, not being in the federal states as defined by FCrRP Rules 1(b)(9) and 54(c) "Act of Congress", its deprivation of the petitioner's constitutional right to freedom, is a direct violation of the "Administrative Law Act of Title 5 USC §706(2)(A).

**2. Not one Supreme Court case law decision supports that the Commission's Title 18 USC §4201 et seq., jurisdictional authority extends over violations of federal statutes for which this petitioner is convicted and which were alleged to have occurred in Colorado - or, any other state of the Union.**

It is obvious that the Commission cannot find judicial support to its statutorial authority over the petitioner, or it would have timely denied his appeal - now 6 months over due and conclusively in violation of its own CFR §2.26(c). And, if there exists any confusion in the law on which the Commission is relying, Title 18 USC §5 and §7 limiting its authority only over violations of federal statutes to the federal states defined by FCrRP Rule 1(b)(9), the Supreme Court in **United States v. Mersky** 4 L Ed 2d 423, held that any "unclarity" in the law is to be ruled in the favor of the petitioner:

> "In the framework of criminal prosecution, <u>unclarity</u> in a statute or a regulation issued thereunder is, of itself, enough to resolve doubts in favor of the defendant."

Here, there is not a question as to the <u>clarity</u> whether the Commission had statutory authority that extends over the petitioner for the alleged violations of federal statutes for which he was convicted under color of law in California and Colorado. Title 18 USC §5 is perspicuous - it irrefutably limits the Commission's statutory authority to the "term United States as used in this title (18) in a territorial sense, (federal states as defined by FCrRP Rule 1(b)(9)), which specifically excludes all "states of the United States", unless the relevant statutes are also proscribed by the Constitution.

The **Mersky** Supreme Court further mandated:

> "In the context of criminal prosecution, the rule of strict construction must be applied in the interpretation of an administrative regulation to which penal consequences attach under the statute authorizing the promulgation of the regulation, as well as to the construction of the statute.

Again, the "strict construction" of Title 18 limits the Commission's authority to the federal states, therefore, in view of **Prigg v. Penns** 10 L Ed2d 1060, "police power extends

5.

over all subjects within the territorial limits of the states, and has never been conceded to the United States" (18th Amendment exception repealed), accordingly the Commission's unlawful extention of its §4201 et seq., authority over the petitioner, is a direct violation of the Administrative Law Act Title 5 USC § 706(2)(A).

**3. The arbitrary and/or capricious time delay in the Commission's ruling on the petitioner's Appeal to further deprive the petitioner of his freedom, constitutes a violation of Title 5 USC §706(2)(C).**

Setting aside the fact that the petitioner put the commission on Notice over 1 year ago that it lacks statutory authority to maintain the petitioner's incarceration, done by letters and on the record in its May 25, 2006 Revocation Hearing, pursuant to the Code of Federal Regulations (CFR) §2.26(c), the Commission had "60 days of receipt of appellant papers (petitioner's Appeal), to affirm, modify or reverse" its Notice of Action of June 12, 2006 to sentence the petitioner in prison for an alleged civil securities violation - not even adjudicated at this time. However, nearly 6 months have past since the due date of the Commission's appeal ruling, with complete knowledge that it does not have legal statutory authority to maintain parole conditions and/or the petitioner's incarceration, it has not yet addressed the appeal.

Therefore, because the 6 month delay can only be deemed intentional to continue its "abuse of discretion", the Commission's arbitrary time delay is "not in accordance with law" of its own regulation of CFR §2.26(c). Accordingly, this capricious time delay that has been in complete disregard for

6.

the petitioner's constitutional right to due process together with his liberty interest, is a direct violation of the Administrative Law Act of Title 5 USC §706(2)(C).

## VI.  RELIEF SOUGHT

Incorporating the Divisions I through V above together with the Facts and Legal Argument proffered in Exhibit 1, Appeal Brief by reference as if fully set forth herein, the petitioner prays that the Court finds and grants the following relief.

1.  That the Commission lacks Title 18 statutory authority over the petitioner to main either "Parole Conditions" and/or the petitioner's incarceration with the sentences the derived from either the federal district courts of California or Colorado; and,

2.  That the continued enforcement of the Parole Conditions and resulting incarceration of the petitioner, under color of law, is a violation of the Administrative Law Act Title 5 USC §706(2)(A) and (C) as promulgated.

Respectfully submitted,

Gerald L. Rogers, In Pro se
FCI Sheridan #12327-086
P.O. Box 6000
Sheridan OR 97378



# APPEAL

**U.S. Department of Justice**
**United States Parole Commission**

Name    Gerald L. Rogers

Register No.    12327-086 _____ Institution  FCI La Tuna Prison

I received a Notice of Action dated  **June 12, 2006** _____ and appeal that decision under 28 C.F.R. §2.26 and/or §2.220.

_____          RECEIVED          **June 21, 2006**
             *(Signature)*                  JUN 2 7 2006                    *(Date)*

## INSTRUCTIONS:

**Eligibility to file the appeal.** This appeal is available only to: (1) a U.S. Code offender who is eligible for parole (including a military offender); (2) a D.C. Code offender whose term of supervised release has been revoked; (3) a transfer treaty offender who committed the foreign offense before November 1, 1987; and (4) a state offender who is under the Commission's jurisdiction pursuant to 18 U.S.C. §3522.

**Procedures.** The appeal must be mailed to the Commission within 30 days from the date on the Notice of Action. The permissible grounds for appeal are described below. On page two of this form you must provide a brief summary of all the grounds for your appeal. On page three of this form you must provide a statement of the facts and reasons in support of each ground identified in your summary. Continuation pages are permitted for longer appeals. You may provide any additional information in an addendum to your appeal. The Commission may refuse to consider any appeal which does not follow this format. The appeal will be decided on the record, and you will be notified of the Commission's decision through a Notice of Action. Do not submit multiple copies of your appeal, and do not submit documents which are in the Commission's file.

**Mailing address.** You should mail the appeal to U.S. Parole Commission, Appeals Unit, 5550 Friendship Boulevard, Chevy Chase, MD 20815-7201.

**Permissible grounds for appeal.**

 (a)  The Commission relied on erroneous information, and the actual facts justify a different decision.

 (b)  There was significant information in existence but not known to me at the time of the hearing, and a different decision would have resulted if the information had been presented.

 (c)  The Commission made a procedural error in my case, and a different decision would have resulted if the correct procedure had been followed.

 (d)  The Commission applied a statute or regulation incorrectly (e.g., in determining my period of imprisonment as a supervised release violator, and/or my further term of supervised release).

 (e)  The Commission made an error in applying the guidelines (error in offense severity rating, salient factor score, and/or calculating time in custody).

 (f)  A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action.

 (g)  There are especially mitigating circumstances in my case which justify a different decision.

## SUMMARY OF GROUNDS FOR APPEAL

Instructions: Briefly describe the error which you believe to have occurred, or the specific reason for the Commission to give you a different decision. You do not need to repeat the "ground for appeal" (from Page 1) which applies. Try to list your most important grounds for appeal first.

Ground One: The Commission under its statutorial authority, Title 18 USC §4201 et seq;, lacks either authority and/or jurisdiction to maintain or order additional incarceration of Rogers.

Ground Two: The Commission's May 25 2006 Hearing violated the due process standards established by the Supreme Court in Morrissey v. Brewer 33 L Ed 2d 484, 499.

Ground Three:

Ground Four:

Note: You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

STATEMENT OF FACTS AND REASONS IN SUPPORT OF EACH GROUND FOR APPEAL

**Instructions:** Please present your grounds for appeal in the order in which they appear in your summary. For each ground of appeal, use the following format, first stating the facts that are relevant to deciding the ground you have identified, and then the reasons why you believe the Commission erred and/or should make a different decision. Use continuation pages in the same format.

**Ground One:** (Circle the applicable ground for appeal from Page 1:   a   b   c   d   e   f  (g)).

**Facts:**_____See Attached "STATEMENT OF FACTS AND LEGAL REASONS....."__

_____starting on Page 1._____

_____

_____

_____

_____

**Reasons:**_____

_____

_____

_____

_____

_____

**Ground Two:** (Circle the applicable ground for appeal from Page 1:   a   b   c   d   e   f  (g)).

**Facts:**_____See Attached "STATEMENT OF FACTS AND LEGAL REASONS..."__

_____starting on Page 18._____

_____

_____

_____

**Reasons:**_____

_____

_____

_____

_____

## TABLE OF AUTHORITIES

|  | Page |
|---|---|
| Adams v. United States 87 L Ed 1421 | 5, 16 |
| Bankers Life v. Holland 346 US 383 | 9 |
| Buckly v. Valeo 424 US 1 (1967) | 13 |
| Christianson v. Colt Inds. 100 L Ed 2d 811 (1988) | 9, 10 |
| Fourco Glass v. Transmirra 353 US 222, 227 | 10 |
| FW/DBS v. Dallas 493 US 215, 231 | 15 |
| In Valley v. Northern Fire 254 US 348 (1920) | 8 |
| Kokkonen v. Guardian Life 511 US 375, 377 | 7 |
| Morrissey v. Brewer 33 L Ed 2d 484, 499 | 6, 9 |
| Morrison v. United States 146 L Ed 2d 658, 676 | 14 |
| SEC v. Rogers 790 F 2d 1450 (9th C.) | 7 |
| Sheldon v. Sill 8 How 441, 449 | 9 |
| Tafova v. U.S. Department of JUstice 748 F 2d 1389 | 5 |
| United States v. Burch 169 F 3d 668, 671 (10 C.) | 7 |
| United States v. Freeman 761 F 2d 549 (9th C.) | 1 |
| United States v. Hall 98 US 343, (1878) | 11 |
| United States v. McBratney 26 L Ed 869 (1851) | 7 |
| Walz v. Tax Commission of NY 493 US 343 | 17 |
| Willy v Coastal Corp 117 L Ed 2d 280, 288 | 8 |

**INDEX - SUMMARY**

Page

<u>GROUND ONE</u> - Lack of Statutorial Authority/Jurisdiction    1

The Commission obtains its authority to administer parole
conditions to sentences of parties in the custody of the Attorney
General pursuant to Title 18 USC §4210 - "Jurisdiction". However,
the controlling statute for the geographical area from where
the sentences are derived is 18 USC §5, defining the United States
"as used in this title (18) in a territorial sense". This
definition of the United States "in a territorial sense" is further
corroborated by the definition state in FCrRP Rule 1(b)(9) "State"
"includes the District of Columbia, and any commonwealth, territory
or possession of the United States - which specifically does
not mention or intends to include any "state of the United States".

Title 18 USC §7 then qualifies "Territorial Jurisdiction"
in the referenced federal "states" in Rule 1(b)(9) for violations
of United States law which pursuant to FCrRP Rule 54(c) "Act
of Congress" "includes any act of Congress locally applicable
to and in force in the District Columbia, Puerto Rico, in a territory
or insular possession", or the same geographical areas as defined
by Rule 1(b)(9) - clarifying any question as to the definition
of the "United States" is as defined by 18 USC §5.

Here, because the "Act(s) of Congress" for which Rogers
is alleged to have violated occurred in the states of California
and Colorado, none having been alleged to have occurred in a
federal state, the same Title 18 USC §5 and §7 controlling statutes
together with Rule 1(b)(9) that limits adjudication jurisdiction
of 18 USC §3231 for the subject United States District Courts, they
also <u>limits</u> the Commission's authority over Rogers' **sentence.**

Therefore, due to Title 18 USC §§5 and 7 limiting the
jurisdiction for the United States District Courts of the Central
District of California and District of Colorado to the federal
"states", they "lacked subject matter jurisdiction" to both convict
and sentence Rogers to a Federal Prison. Accordingly, because
the Courts orders were "void" <u>ab initio</u>, the statutorial authority
for the Commission to administer Rogers' parole conditions were
also void from their inception.

<u>GROUND TWO</u> - Due Process Violation    18

Here, the Commission violated one of the most fundmental
principles of the Constitution's Fifth Amendment Right to Due
Process of Law. In an act of Corruption to cover-up for its
colleagues in government who were responsible for the losses
incurred by Rogers business, for which he is now sentenced to
a new term of incarceration of 10 years, in the face of Rogers
naming those government colleagues as exculpatory witnesses,
the Commission dismissed them, <u>sua sponte</u>, without explanation.

This act of corruption rises to the level of opprobrium,
that it constitutes a civil rights criminal act.

STATEMENT OF FACTS AND LEGAL REASONS IN SUPPORT OF EACH GROUND
CONTINUED

This appeal is being filed by Gerald L. Rogers 12327-086

("Rogers") under the standards setforth by Title 28 USC §2241

for a petition for habeas relief as a result of the United States

Parole Commission ("Commission") violating the Constitution, laws

and treaties of the United States.

GROUND ONE

The Commission under its statutorial authority, Title 18

USC §4201 et seq., lacks either authority and/or jurisdiction

to maintain or order additional incarceration of Rogers.

I.  Background Facts

1.  Rogers was tried and convicted under color of law in

a non-judicial proceeding by the United States District Courts

of the Central District of California and District of Colorado.

2.  The resulting sentences for his alleged tax and attendant

securities violations of United States law, even though he was

never "found guilty" pursuant to 18 USC §3673, were for a total

of 35 years.

3.  In Los Angeles, a 10 year sentence was imposed for

advising his clients how to defer their federal income tax to

a later year - a non-existant federal tax crime as was decided

by the Ninth Circuit Court of Appeals in **United States v. Freeman**

761 F 2d 549 (9th C. 1985), but the Court denied Rogers that equal

protection of law.

4.  In Denver, in U.S. v. Rogers 84-CR-337, for which the

sentence of 25 years that Rogers is still serving, the government

brought a double jeopardy prosecution to **SEC v. Rogers** 790 F 2d

1450 (9th C. 1985), coupled with counts for a Canadian mining

1.

business in which Rogers was not a participant.

5.  Utilizing the under color of law judgments and commitment order for an aggregate sentence of 35 years, after 10 years and 11 months, on December 1, 2000, Rogers was granted parole.

6.  In May of 2003, pursuant to a complaint by Rogers' ex-business associate, Wayne Holm, the Denver AUSA Thomas O'Rourke prevailed on the Commission to revoke Rogers parole due to his suit against Holm for his theft of $550,000 from Rogers some years before.

7.  On February 25, 2005, just prior to the Commission issuing a warrant for Rogers arrest for his being a signature on his own business bank account, a memo written by the Commission's Michael Banks to the Commission evidences that he and Jeffrey Norris of the Securities and Exchange Commission were engaged in a conspiracy with Rogers' AEA Bank to thwart the orderly operation of Rogers two companies, Premium Income Corp and InForex Ltd.

8.  The Commission/SEC's conspiracy is evidenced to have expanded to the Federal Bureau of Investigation, when the conspirators prevailed on FBI Special Agent Joseph Quinn to unlawfully intercept Rogers' mail - which the evidence shows that Quinn intercepted a letter of instructions written by Rogers to William Hofius as to how to close-out the subject companies' open currency positions. Upon the conspirators learning of the instructions, the Commission's Mr. Banks and SEC's Mr. Norris prevailed on FBI's Quinn to conceal those instructions, which thereafter resulted in a $5,000,000 loss to Rogers' Premium Income Corp Clients.

9.  Without a complaint from Rogers' clients, the Commission then based its reason for a "re-hearing" pursuant to a SEC law suit, CV 03-05-415-B as filed in the Dallas Northern District

2.

Court of the United States, which has, to date, has made no findings
of fraud and/or other misconduct of Rogers.  (The irony of the
Commission adopting the false SEC allegations is that the suit
was drafted by the SEC's Norris, who was directly involved in
causing the $5,000,000 financial loss to Rogers' clients - not
to mention that the evidence now shows that the same SEC NOrris
is also involved in looting approximately $1,000,000 of the
remaining clients' funds together with the Court's appointed
receiver, Kelly Crawford.)

## II. JURISDICTION FACTS

1.  The jurisdiction for all violations of United States
law is granted pursuant to 18 USC §3231 for "district courts
of the United States" - constitutional Article III §2 courts
which provides jurisdiction for all "controversies to which the
United States shall be a party".

2.  The United States District Court for the Central District
of California, is not an Article III Constitutional Court, but
is a Congressional Court created by public law when California
territory became a state - which therein, obtained its statutorial
authority for jurisdiction from the Judiciary Act of 1789, Statute
I, §9, see Exhibit 1.

3.  Neither is the District of Colorado court an Article
III Constitutional court, but got its authority and jurisdiction
from the Judiciary Act of 1789 as in fact, as did the federal courts
that  are  still located in the original 13 colony states.

4.  In addition to Title 18, criminal violations ,.  Title
15 and 26 are also justiciable pursuant to the "District Courts"
18 USC §3231 jurisdiction statute.

5.  However, the jurisdcition for the District Courts under

§3231 jurisdiction, is further qualified by Title 18 USC §5 with the definition of "United States" as used in this title (18) (being) in a territorial sense... subject to the jurisdiction of the United States".

6.  Pursuant to 18 USC §7 "....Territorial Jurisdiction of the United States as used in this title (18) **includes** (1) high seas....." and other properties of the United States described therein, but none of the states of the Union.

7.  Pursuant to **18** USC §3001, Federal Criminal Rules of Procedures (FCrRP) as promulgated, by definition of "State" in Rule 1(b)(9), it corroborates that the "United States in a territorial sense" pursuant to §5, "includes District of Columbia, and any commonwealth, territory or possession of the United States", not any state of the United States, namely either California or Colorado.

8.  The Acts of Congress that are justiciable in the federal "states" defined in Rule 1(b)(9) for jurisdiction in the territories and properties described in 18 USC §7 are also in accord with the violations of laws as applicable pursuant to Rule 54(c). (Rule 54(c) "Application of Terms" for "Act of Congress is designated to mean -

> "Act of Congress" includes any act of Congress (Titles 15, 18 or 26) locally applicable to and in force in District of Columbia, Puerto Rico, in a territory or in an insular possession" - again, with no mention of being applicable to any law in a state of the Union.

(See 18 USC §513 proscribing the constitutional crime of counterfeiting "(5) the term "state" includes a State of the United States, District of Columbia......" Thus, when Congress promulgated statutes proscribing crimes as authorized by the Constitution, the statute so states that it pertains also to a state in the Union.)

9.  The United States (in a territorial sense) Parole Commission

obtains its statutorial authority pursuant to 18 USC §4201 et seq., but just as the jurisdiction for the district court of the United States are limited and qualified by 18 USC §§5 and 7 , so are the Commission's authority and jurisdiction limited to parolees who were sentenced in a federal state as defined in FCrRP Rule 1(b)(9), not a parolee in any state of the United States, except for a constitutionally authorized crime.

    10.   Pursuant to Title 18 USC §3673, for Rogers to have been "found guilty" and thereafter for his sentence to have been authorized pursuant to §3551, there must have been an "acceptance by a court of a plea of guilty or nolo-contendere - but none exists in the record.

    11.   Under the standards established by the Supreme Court in **Adams v. United States** 87 LED 1421, jurisdiction for the Commission to adjudicate its self-generated complaint of fraud that they allege to have occurred, among other states and Texas, the Commission had to:

    1) Show that the United States had ownership of the geographical area in which the alleged fraud occurred;

    2) document that the legislature of the involved states had surrendered back to the United States their jurisdiction granted to them at statehood over the subject areas; and,

    3) document that pursuant to Title 40 USC §255, wherein the United States accepted jurisdiction to the same referenced geographical areas.

## III.   JURISDICTION LAW APPLIED

    In the year that Rogers was indicted, 1984, the Tenth Circuit Court of Appeals, the controlling Court over the District of Colorado Court and "the-law-of-case" mandated in **Tafova v. United States Department of Justice** 748 F 2d 1389 (10 C 1984):

    "Insofar as subject matter jurisdiction is concerned.... federal   courts must....satisfy itself of its power to

5.

adjudicate in every case at every stage of the proceeding
of the parties."

However, here instead of verifying its statutory authority
over Rogers' sentence and impose a new 10 year term for his imprisonment,
the Commission usurped the authority of  Congress and prescribed
a non-descript self styled crime of fraud.  Then without a complaining
party, contemporaneously prosecuted and adjudged Rogers to be
guilty - all without an iota of evidence proving intent - the
requisite of every Congress promulgated statute involving fraud.

As will be proven here, from the inception of Rogers' sentences,
the Commission lacked statutorial authority for jurisdiction
over his sentences under the Commission's Jurisdiction Statute,
§4210.   Furthermore, in the pejorative, it will be evidenced
that the Commission has engaged in acts of corruption as are
defined by the **Inter-American Convention Against Corruption Article
VI** to unlawfully maintain administrative control over Rogers'
sentence.

1.  **When the Commission adopted the tri-position as complainant,
prosecutor and trier of fact and imposed a new term of incarceration
of Rogers as if he were legally tried by a court of law, under
the due process of law mandate in Morrissey v. Brewer 33 L Ed
2d 484, 499, the Commission had the same legal responsibility
to verify its subject matter jurisdiction and/or statutorial
authority as did the prior adjudicating District Courts in Rogers'
Cases.**

Before the Commission paroled Rogers on December 1, 2000,
it knew or should have known that his sentence was flawed by
the law of his case that the adjudicating Court lacked subject
matter jurisdiction.  The Tenth Circuit, from where Rogers sentence

6.

originates, in a 1999 case reversing a federal conviction for

the same "on point" legal issue, the federal courts "lack subject

matter jurisdiction" over crimes committed in the state of Colorado,

in **United States v. Burch** 169 F 3d 668, 671 (10th C. 1999) citing

the Supreme Court in **United States v. McBratney** 26 L Ed 869 (1881),

it was found:

> "Here, Colorado's admission into the Union invested its
> criminal jurisdiction over its citizens 'throughout the
> whole of the territory within limits, including the Ute
> Reservation."

And, unquestionably, the same transfer of criminal jurisdiction

occurred in California and Texas as occurred in Colorado when

they became states - and unless otherwise specified, all the

states have gotten their jurisdiction from the Judiciary Act

of 1789, Statute I, §9.

Therefore, because the Commission's parent, Department

of Justice opposed the **Burch** supra jurisdiction issue through

its U.S. Attorneys Office in Denver, and lost in 1999, just months

before the Commission granted Rogers' parole in December of 2000,

the Commission knew or should have known that it was a matter

of **stare decisis** its jurisdiction over Rogers' sentence was without

statutory authority.

Furthermore, subsequent to **Burch id.**, the Commission must

have known that without the District Court having jurisdiction,

Rogers' conviction and sentence, thus resulted merely from an

unenforceable "judicial decree" as was found in **Kokkonen v. Guardian**

**Life Ins.** 511 US 375, 377 -

> "Federal courts, as courts of limited jurisdiction, possess
> only such authority as is conferred to them by the
> Constitution and acts of Congress and this authority cannot
> be expanded by judicial decree."

However, in the face of Rogers' sentence being by judicial

decree and most recently in the face of Rogers repeated notices
challenging the Commission's jurisdiction both to his "Case Analyst"
Mary Jo Williams and the May 25, 2006 Hearing Officer, Pat Denton,
on the hearing record, with deliberate indifference, the Commission
has not only proceeded to supercede jurisdiction authority intended
by Congress pursuant to 18 USC §4210, but superceded its limitations
that result from 18 USC §5's definition of "United States" and
the "Territorial Jurisdiction" stated in §7.

It has also been long standing Supreme Court law that when
a Court, in this case, the Commission, supercedes its jurisdiction,
its judgments are void, **ab initio.**  The Supreme Court in **In Valley
v. Northern Fire and Marine** 254 US 348 (1920) ruled:

> "When a court reaches beyond its statutory grant of subject
> matter jurisdiction, its judgment is void....they are not
> voidable, but simply void and that is even prior to reversal."
> Also see **Stoll v. Gotlief** 305 US 165, 171-172.

Therefore, because the District of Colorado Court was a
Congressional Court created under the Judiciary Act of 1789,
as found by the Supreme Court in **Willy v. Coastal Corp** 117 LEd
2d 280, 288, when the defendant was tried without either constitutional
or statutory jurisdiction, it was nothing more than an "administrative
(hearing) of a nonjudicial nature" - which in this case, was
to accommodate the government's abuse of power.

Here, with the Commission lacking authority over Rogers'
sentence from its inception and now charging and convicting him
for a new crime together with the intent to keep him unlawfully
incarcerated for 10 years in absolute absence of statutorial
authority pursuant to 18 USC §5 as to how it limits the Commission
to sentences that are only derived from judgments from the courts
in the federal states defined by FCrRP Rule 1(b)(9) is clearly erroneous.

8.

Furthermore, when jurisdiction is even questionable, the government (Commission) must prove that there is not "an usurpation of judicial power. (See **Bankers Life v. Holland** 346 US @ 383.)

Here, with the Commission usurping the power of Congress with the promulgation of a  nondescript fraud then acting in three capacities, complainant, prosecutor and trier of fact, after Rogers challenged the Commission's statutory authority, thus jurisdiction to conduct a "rehearing", by law, pursuant to the due process mandate in **Morrissey v. Brewer** supra, the Commission was obligated to prove that its authority over Rogers was valid - but they did not.

Also in **Christianson** supra @ 831, citing controlling Supreme Court case law on jurisdiction, still in good standing 150 years after the Courts decision, in **Sheldon v. Sill** 8 How 441, 449, 12 L Ed 147 (1850)

> "Courts (as this Commission was), created by statute can have no jurisdiction but such as the statute confers".

Thus, conclusively, with the Commission acting in the capacity of a court to convict Rogers of new criminal conduct and then sentence him with an order for a term of incarceration of 10 years, its statutorial authority for that jurisdiction under §4201 et seq., by law must also be subject to be proven as required by the Supreme Court in **Bankers Life** supra.   The Commission's jurisdiction statute §4210, simply does not stand alone - when Rogers brought to the Commission's attention that its jurisdiction was limited pursuant to §5 "United States" defined as used in the title (18) in a territorial sense..." to the federal state conviction sentences, it should have taken steps to prove its authority, instead of proceeding to convict Rogers of a new

9.

crime by "decree" - no matter whether what kind of a tribunal it is.

Therefore, clearly pursuant to §5 as it applies to all of Title 18 statutes, the Commission lacked statutory authority to adjudicate a "clearly erroneous" conviction that "works a manifest injustice" (**Christianson** 100 LEd 2d 811 as occurred here.

Accordingly, because the Commission has been working "a manifest injustice" on Rogers since December 1, 2000, the only remedy is for the Commission to terminate Rogers' Parole together with his incarceration, without further delay.

## 2. The Commission knew or should have known that the judgment and sentence orders by the subject United States District Courts lacked subject matter jurisdiction by the Statute that created them - the Judiciary Act of 1789, Statute I, §9.

Here, the Commission must have known that both the California and Colorado United States District Courts were created, just as the courts were for the original 13 colony states, by Public Law at statehood that was granted its authority for the courts' jurisdiction from the "Judiciary Act of 1789, Statute I Section 9. In relevant part Section 9 states:

> "That the district courts shall have...cognizance of all crimes....under the authority of the United States....where no other punishment than whipping.....fine not exceeding One Hundred Dollars, or a term of imprisonment not exceeding six months."

And, pursuant to the Supreme Court **in Fourco Glass v. Transmirra** 353 US 222, 227, when Congress promulgated the Judiciary Code Act of 1940, the jurisdiction of the United States District Courts were not changed.

10.

Furthermore, with the Commission's knowledge that the courts' jurisdiction was limited to the Judiciary Act of 1789, it was obvious that Rogers' 35 year sentence to a federal prison, with its attendant fine of $40,000 far exceeded the jurisdiction of the courts.

In **United States v. Hall** 98 US 343 (1878), a landmark case concerning ¨Statutory Authorization, which has never been overturned, the Supreme Court mandated:

> "The federal courts possess no jurisdiction over crimes and offenses committed against authority of the United States except what as given to them by the power that created them nor can they be invested with such jurisdiction beyond that power ceded to the United States by the Constitution authorizing Congress to confer - from which it flows that the Congress must first define or recognize it as such and affix a punishment to it and confer jurisdiction upon some court to try the offender."

Here, pursuant to the Constitution's Articles I and IV which confers on Congress the authority to prescribe only three crimes, counterfeiting, piracy, and treason together with Title 18 USC §§5 and 7, limiting the jurisdiction under §3231 for the federal courts to the federal "states" defined by FCrRP Rule 1(b)(9), the Commission knew or should have known that the United States laws which Rogers was alleged to have violated, were not either cognizable nor justiciable in any congressional created United States District Court that now exist in the states of the Union.

Furthermore, the punishment of Rogers with the imposition of an "Authorized Sentence" under 18 USC §3551, the courts would have had to accepted from Rogers a "plea of guilt or nolo contendere" to have been "found guilty" as required by 18 USC §3673.  But, the record is clear, Rogers has never plead guilty, in fact maintains his innocence to this day. And, just as clear, the "Act(s) of Congress" to which FCrRP Rule 54(c)refers, do not include the

**11.**

Title 15, 18 or 26 violations of United States law to which Rogers
is alleged to have violated in California and/or Colorado.

Therefore, because the alleged violations of United States
law for which Rogers was accused of violating were justiciable
only in the "states" defined by FCrRP Rule 1(b)(9), this not
only voided the United States District Courts' "judgment and
commitments", but the Commission's authority over Rogers sentence
too.   Accordingly, the only remedy for the "manifest injustice"
that has occurred, is the immediate termination of the Commission's
pretention of jurisdiction and immediate release from prison.

   **3.  Even if the Commission was ignorant as to the trial
and sentencing courts lack of subject matter jurisdiction under
the Judiciary Act of 1789, it knew or should have known that
the Title 15, 18 and 26 statutes for which Rogers was convicted
for the violations having occurred in either California or Colorado,
the Federal Criminal Rules have no provisions for "proceedings"
to adjudicate the alleged crimes.**

   The Federal Criminal Rules were codified by Congress as
18 USC §3001 and at which time it authorized the Supreme Court
to promulgate the Rules pursuant to the "Act of June 28, 1940,
codified as 18 USC §3771.  However, the Rules pursuant to Congress'
authorization to the Supreme Court, was to promulgate **them to**
apply only to the federal states therein stated, not to any state
of the Union as can be clearly verified by the FCrRP Rule 54
"ADVISORY COMMITTEE NOTES" 1944 Adoption:

   **"Note to subdivision (a)(1)1.**  The Act of June 28 1940
   (§3771) authorizes the Supreme Court to prescribe the Rules
   of Criminal Procedures for the district courts of the United
   States in respect to proceeding prior to and including
   verdict or finding of guilty or not guilty, **expressly applicable
   to district courts for Alaska, Hawaii (when they were territories),
   Puerto Rico......"**

Thus, with the FCrRP Rule 1(a)(1) providing that "These rules govern the procedure in all criminal proceedings" with Rule 1 (a)(4) is the only provision for "Removed Proceedings" from state courts with the definition of "state" in Rule 1(b)(9) which only "includes District of Columbia, any commonwealth, in a territory or insular possession", corroborating the Rule 54 **"ADVISORY COMMITTEE NOTES"**, with no reference to any state of the United States, the Commission had to have known that the Title 15, 18 and 26 violations for which Rogers was alleged to have violated in California and Colorado, were clearly not justiciable by the subject United States District Courts.

**FOR EXAMPLE - Rule 54(b) Proceedings in relevant part states:**

"These Rules apply to criminal prosecutions (for violations of any Act of Congress) removed to the United States district courts from state courts" - which are defined by Rule 1(b)(9) to exists in the federal states "District of Columbia, any commonwealth, in a territory or insular possession".

Therefore, if one would attempt to match the violations of law to which Rogers is alleged to have violated in California and Colorado, none of the provisions in Rule 54(b) and/or the new Rule 1(a)(4) "Removed Proceedings" apply to support the Commission's authority under its Jurisdiction statute §4210. Accordingly, because none of the Federal Criminal Rules apply to govern Rogers' "criminal proceedings in a United States district court", his conviction and sentence as was determined by the Supreme Court in **Kokkonen id.,** in accord with **Buckly v. Valeo** 424 US 1 (1976) was "of a nonjudicial nature".

13.

## IV.  CONSTITUTIONAL LAW APPLIED

**1.  With a cursory reading of the Constitution, the Commission would have known that the sentence imposed on Rogers violated his constitutional rights to equal protection of law due to the fact that the Constitution makes no provisions to punish for violations of the "interstate commerce" clause of Article I, Section 8, Clause 3 on which the government claimed jurisdiction.**

Indeed, the Constitution did not grant Congress any authority to prescribe punishment for any violation of United States law by a citizen of a state of the United States, unless the Constitution specifically so stated it.  For example, when Congress prescribed laws against counterfeiting in Title 18 USC §513, with specificity, clause (5) so designated that the statute was enforceable in a "State" which "includes a State of the United States, the District of Columbia, Puerto Rico, etc."

On the other hand, when Congress invoked the vernacular of the interstate commerce clause, for example in 18 USC §921 for the interstate commerce for the transportation of "FIRE ARMS" "between any place in a State and any place outside of that State", the "term 'State' includes District of Columbia, the Commonwealth of Puerto Rico, and the possessions of the United States" - conclusively not including any "State of the United States" as the counterfeiting constitutionally prescribed statute does.

This fact of Constitutional Law is also supported by the Supreme Court.  In **Morrison** supra, citing **United States v. Lopez** 514 US @ 596-597 and n 6:

> "The Constitution withholds from Congress a plenary police power....We always have rejected readings of the Commerce clause and the scope of federal power that would permit Congress to exercise a police power." "Noting that the prior "Congresses did not exact nationwide punishment for

14.

criminal conduct under the Commerce Clause."

Therefore, because the Constitution does not authorize Congress to promulgate police powers to criminally enforce laws of the United States in the "States of the United States", even including for alleged violations of the interstate commerce clause (which the government has been predisposed to fraudulently claim that the clause gives them the authority and the courts the jurisdiction for prosecution of alleged securities and mail fraud violations, but clearly does not), when the Commission issued and caused the unconstitutional arrest of Rogers, it was a direct violation of his guaranteed rights to "liberty" pursuant to the Supreme Law of the Land, "International Covenant on Political and Civil Rights Article 9.1.

Accordingly, because the Constitution is specific that Congress only had the power to create police power over "10 miles square" pursuant to the Constitution's Article I, clause 17 and over "Territory and other property under Article IV Section 3 clause 2, as are also defined as the federal states by FCrRP Rule 1(b)(9), by Constitutional Law, the Commission lacked statutorial authority to neither have Rogers arrested and/or nor to maintain his continued incarceration.

2. **When the Commission, without a complaining party, usurped the power of Congress by prescribing its own non-descript fraud violation together with, acting in the capacity of the prosecutor and federal judge (finder of fact and adjudicator), for an alleged crime that occurred in Texas, it did so without establishing the requisites for either statutorial authority and/or jurisdiction.**

As decided by the Supreme Court in FW/PBS v. Dallas 493 US 215, 231:

15.

US 215, 231:

>"The federal courts are under an independent obligation
>to examine their own jurisdiction and standing is perhaps
>the most important of the jurisdictional doctrine."  Quoting
**Allen v. Wright** 468 US 737, 750.

However, this "most important of jurisdictional doctrine"
has apparently gotten lost pursuant to the quasi-judicial functions
of the Commission.  In addition to the Commission's authority
over Rogers being rendered void pursuant to Title 18 USC §5 and
§7 limiting its authority only over parolees whose sentences
have originated in the federal states and violations applicable
as designated by FCrRP Rule 54(c), the Commission did not establish
the three criteria for establishing federal jurisdiction as was
mandated in  **Adams v. United States** supra.

To prove jurisdiction pursuant to **Adams**, the Commission
had to document that (1) the property on which the alleged fraud
in Texas occurred was owned by the United States, (2) that the
relevant state legislature surrendered jurisdiction over the
geographical area on which the alleged fraud occurred, and (3)
document that the United States accepted the jurisdiction pursuant
to Title 40 USC §255.

Therefore, because the record is void of the Commission
proving its jurisdiction after Rogers challenge and document
the violation occurred on federal property as required by Adams,
it not only lacked statutory authority to continue to administer
**Rogers** parole, because it even lacked the jurisdiction to try
Rogers for a new crime of fraud, it superceded every authority
granted to it by Congress.  Accordingly, the remedy to correct
the Commission's unconstitutional actions, is termination of
Rogers' parole status and immediate release from prison.

## V.  CONCLUSION

**WHEREFORE,** there simply exists no legal excuse for the Commission not to know and/or ignore the limitations of its authroity pursuant to the controlling statutes of Title 18 USC §§5 and 7.  Unquestionably the Commission's statutorial authority for jurisdiction under its §4210 pursuant to §§5 and 7 is limited to administering parole conditions on sentences that have originated in the federal states as defined by FCrRP Rule 1(b)(9).

And, the pejorative is, to keep the Commission operating with its repealed statutes, extended for over 18 years, it has obviously defrauded Congress with representations of having a great number more parolees over which its legal authority commands.

The apparent attitude of the officers of the Commission is that they have gotten away with the fraud they have worked against Congress, to date, why should we let Rogers stop or interfere with our scam now?  For one reason, what the employees of the Commission are doing is clearly in violation of the law.  For another, if this matter is not settled according to law within the Commission, Rogers will have no alternative to proceed to set a judicial precedent that will ultimately expose the government's unlawful Multi-Billion Dollar forfeiture business.

In **Walz v. Tax Commission of New York** 493 US 343, the Supreme Court made it abundantly clear:

> "It is obviously correct that no one acquires a vested
> or protected right in violation of the Constitution by
> long use, even when that span of time covers our entire
> National existence and even predates it."

Therefore, because of the Commission's gross abuse of discretion resulting violations of the Constitution, laws and treaties of the United States, accordingly the sole remedy is to terminate

Rogers' parole conditions and effect his immediate release from prison.

**GROUND TWO**

**The Commission's May 25, 2006 Hearing violated the due process standards established by the Supreme Court in Morrissey v. Brewer 33 L Ed 2d 484, 499.**

**I.   Facts**

1.  With no more than an 18 hour notice, the Commission after a 6 month delay, ambushed Rogers with a hearing.

2.  Without prior notice, the Commission hearing officer, Pat Denton, advised Rogers that the Commission sua sponte, dismissed the exculpatory witness for his defense.

3.  Instead of producing the exculpatory witnesses, 3 of them being officers of the government, FBI Agent Joseph Quinn, Securities and Exchange Commission counsel Jeffrey Norris and Daniel Nathan of the Commodities Future Trading Commission, the Commission engaged in a cover-up with the dismissal of those witnesses - those 3 witnesses were all involved with causing the $5,000,000 loss incurred by Rogers Premium Income Corp for which Rogers has now been sentenced to 10 years in prison.

4.  The two witnesses chosen by the Commission for their prosecution of Rogers, provided no physical evidence and worse, their entire testimony was all based on second hand and sometime third hand hearsay statements.

5.  As evidenced by the Commission's Parole Officer, Michael Banks of Seattle, his memo to this Commission prodding it to hurry up with the issuance of an arrest warrant shows that he was also involved in being instrumental in causing the $5,000,000 loss for which Rogers is now sentenced.

## II.   DUE PROCESS LAW

### 1. The Commission's dismissal of the exculpatory witnesses rises to the level of opprobrium that it amounts to being criminal.

Pursuant to **Morrissey**, id., @ 499, Rogers had "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation). Here, the parole hearing officer Pat Denton, did nothing more than announce that the Commission decided that Rogers did not need those exculpatory witnesses to testify.  With specificity, the hearing officer made no other excuses/to show any kind of "good cause" for the witnesses not appearing - let alone a true confrontation of the prosecution's hand picked witnesses - even with the Commission's witness from the state of Texas was lying through her teeth.

Furthermore, the Commission's capricious dismissal to cover-up for the exculpatory witnesses' actions to cause the huge loss, clearly a due process violation, the Commission's acts of corruption as defined by the Inter-American Convention Against Corruption Article IV, they also violated Rogers guaranteed rights under the Supreme Law of the Land "International Covenant on Political and Civil Rights Article 14 - which provides -

> "1 .....In determination of any criminal charge against him.... everyone shall be entitled to a fair and public hearing by a competent,  independent and impartial tribunal established by law.....
>
> 3,...entitled to the following minimum guarantees, in full equality;...
>
> (e)  To examine or have examined the witnesses against him and to obtain the attendance and examination of witnesses on his behalf under the **same conditins** as witnesses against him."

First, with the Commission being the complaining party - not a client - and the hearing officer being both the prosecutor

judge (trier of facts - tribunal or however the Commission determines that party to be), Ms. Denton, by the farthest fetch of one's imagination, was neither "independent" nor "impartial".

Secondly, when the Commission, <u>sua</u> <u>sponte</u>, dismissed the exculpatory witnesses, a pathetic attempt to cover-up for its colleagues in government, its violation of the Covenant's Article 14.3(e) **same condition** clause was a direct violation of Rogers' guaranteed civil rights under the Covenant and the mandate in **Morrissey id.,** requirement that however informal that parole hearings are conducted, they must still adhere to "due process".

Therefore, if a honest hearing had been conducted with the presence of the exculpatory witnesses·- even though they most likely would have lied - the physical evidence which they know exists would have caused a different conclusion than Rogers intentionally caused the fraud to which he is now sentenced to a term of 10 years.

Accordingly, due to the Commission's own misconduct, the parole conditions must be terminated and Rogers release from prison should be effected immediately.

### DECLARATION OF GERALD L. ROGERS

I swear under the penalty of perjury that the facts that are stated herein are true and correct. Done on this 21st day of May, 2006 in the City of Anthony NM/TX.

Declarant Gerald L. Rogers

### III. CONCLUSION

**WHEREFORE,** whether the Commission's Title 18 USC §4201 et. seq., applicable and enforceable against the petitioner, the repealed federal statute, National Prohibition (Alcohol) Act puts the nail in the Commission's coffin.  For the government to have enforced that federal Prohibition statute in any of the 48 States, it was required that the States of the Union ratify the **18th Amendment of the United States Constitution.**

Here, the Commission's legal position is no different. The States of the United States have not only not ratified a requisite amendment to the Constitution, but no State is of record surrendering authority nor jurisdiction to the Commission over the petitioner.  Pure and simple, the Commission's abuse of process, whether intentional or not, constitutes a devolution of the Constitution and its controlling laws which borders on a "Seditious Conspiracy" as defined by title 18 USC §2384 - and must be terminated.

### I    VERIFICATION

I swear under the penalty of perjury that the facts stated and law presented are true and correct.  Done in the city of Anthony New Mexico on this 13th day of July , 2006.

Respectfully submitted by

Declarant, Gerald L. Rogers
FCI LaTuna 12327-086
P.O. Box 3000
Anthony NM/TX 88021

TED STATES OF AMERICA vs.                                    Docket No. CR -   - 292 RMT

endant's Name   Gerald L. Rogers                         Social Security No.

esidence   33026 17th Place South, #C201                 Mailing Address Metropolitan Detention Cente

lress   Federal Way, WA  98003                           535 N. Alameda St., LA  CA  90012

## JUDGMENT AND PROBATION / COMMITMENT ORDER

In the presence of the attorney for the government, the defendant appeared in person on this date.

| MONTH | DAY | YEAR |
|---|---|---|
| 7-11-94 | | |

| OUNSEL | ☐ | WITHOUT COUNSEL | However, the Court advised defendant of right to counsel and asked whether defendant desired to have counsel appointed by the Court and the defendant thereupon waived assistance of counsel. |

☒ WITH COUNSEL    David Derchford, retained
(Name of Counsel)

PLEA   ☐ GUILTY, and the Court being satisfied that there is a factual basis for the plea.   ☐ NOLO CONTENDERE ☒☒ NOT GUILTY

NDING   There being a finding / verdict of ☒ GUILTY, defendant has been convicted as charged of the offense(s) of:

18 USC 1341: Mail Fraud as charged in counts 1-2 and 4-9 of the indictment;
26 USC 7206(2):  Aiding and Assisting the Preparation of False Income Tax
Returns as charged in counts 10-30 of the indictment.

JGMENT / PROB./MITMENT ORDER   The Court asked whether defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is hereby committed to the custody of the ~~Exxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ Attorney General or her authorized representative for imprisonment, for a term of five years on count 1. It i adjudged that the defendant is hereby committed to the custody of the Attorney General or her authorized representative for imprisonment, for a term of five years on count 2, and that Count 2 shall run consecutive to Count 1 for a total term of imprisonment of 10 years. He shall become eligible for parole under 18 USC 4205(a) upon serving one third of such term. It is further adjudged that on Counts 4 through 9, imposition of sentence is hereby suspended, and the defendant is placed on probation for period of five years. Such counts are to run concurrent with each other bu consecutive to the period of custody imposed on counts 1 and 2, including any period of parole or other supervised time. The terms and conditions of probation are as follows: 1. The defendant shall comply with the rules an regulations of the U. S. Probation Office and General Order 318; 2. The defendant shall provide on a monthly basis to the probation officer a financial statement, with supporting docmuentation, as to his source of income and his expenses. 3. All Employment, including self-employment is to be submitted to the Probation Officer for prior approval. Defendant's motion to dismiss stay of imposition of sentence is denied.

ddition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised ease set out on the reverse side of this judgment be imposed. The Court may change the conditions of supervision, reduce or extend the period upervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke ervision for a violation occurring during the supervision period.

This is a direct commitment to the Bureau of Prisons, and the Court has NO OBJECTION should the Bureau of Prisons designate defendant to a Community Corrections Center.

ned By ☒☒ U.S. District Judge     ROBERT M. TAKASUGI     ☐ U.S. Magistrate

ordered that the Clerk deliver a certified copy is Judgment and Probation / Commitment Order e U.S. Marshal or other qualified officer.

Dated / Filed   7-12-94

LEONARD A. BROSNAN, CLERK

By   _____ Deputy Clerk

245-A  (01/90)

EXHIBIT

FIRST CONGRESS. Sess. I. Ch. 20. 1789. 77

[Acts of June 5, 1794, sect. 6; act of Feb. 13, 1807; act of March 3, 1815, sect. 4.]

Original cognizance in maritime causes and of seizure under the laws of the United States.

high seas; where no other punishment than whipping, not exceeding thirty stripes, a fine not exceeding one hundred dollars, or a term of imprisonment not exceeding six months, is to be inflicted; and shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade of the United States, where the seizures are made, on waters which are navigable from the sea by vessels of ten or more tons burthen, within their respective districts as well as upon the high seas; (a) saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it; and shall also have exclusive original cognizance of all seizures on land, or other waters than as aforesaid, made, and of all suits for penalties and forfeitures incurred, under the laws of the United States. (b) And shall also have cognizance, concurrent with the courts of the several States, or the circuit courts, as the case may be, of all causes where an alien sues for a tort only in violation of the law of nations or a treaty of the United States. (c) And shall also have cognizance, concurrent as last mentioned, of all suits at common law where the United States sue, and the matter in dispute amounts, exclusive of costs, to the sum or value of one hundred dollars. And shall also have jurisdiction exclusively of the courts of the several States, of all suits against consuls or vice-consuls, except for offences above the description aforesaid. (d) And the trial of issues in fact, in the district courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury.

Concurrent jurisdiction.

Trial of fact by jury.

SEC. 10. *And be it further enacted,* That the district court in Kentucky district shall, besides the jurisdiction aforesaid, have jurisdiction of all other causes, except of appeals and writs of error, hereinafter made cognizable in a circuit court, and shall proceed therein in the same

Kentucky district court. [Obsolete.]

---

(a) Jurisdiction of the District Courts in cases of admiralty seizures, under laws of impost, navigation and trade. M'Donough v. Danery, 3 Dall. 188; 1 Cond. Rep. 94. The United States v. La Vengeance, 3 Dall. 297; 1 Cond. Rep. 132. Glass et al. v. The Betsey, 3 Dall. 6; 1 Cond. Rep. 10. The Alerta, 3 Cranch, 359; 3 Cond. Rep. 425. The Merino et al., 9 Wheat. 391; 5 Cond. Rep. 623. The Josefa Segunda, 10 Wheat. 312; 6 Cond. Rep. 111. Jennings v. Carson, 4 Cranch, 2; 2 Cond. Rep. The Sarah, 8 Wheat. 391; 5 Cond. Rep. 472. Penhallow et al. v. Doane's Adm'rs, 3 Dall. 54; 1 Cond. Rep. 21. United States v. Richard Peters, 3 Dall. 121; 1 Cond. Rep. 60. Hudson et al. v. Guestier, 6 Cranch, 281; 2 Cond. Rep. 374. Brown v. The United States, 8 Cranch, 110; 3 Cond. Rep. 56. The Sarah, 8 Wheat. 391; 5 Cond. Rep. 472. The Amiable Nancy, 3 Wheat. 546; 4 Cond. Rep. 322. Slocum v. Maybury, 2 Wheat. 1; 4 Cond. Rep. 1. Gelston et al. v. Hoyt, 3 Wheat. 246; 4 Cond. Rep. 244. The Bolina, 1 Gallis' C. C. R. 75. The Robert Fulton, 1 Paine's C. C. R. 620; Bee's D. C. R. 11. De Lovio v. Boit et al., 2 Gallis' C. C. R. 398. The Abby, 1 Mason's Rep. 360. The Little Ann, Paine's C. C. R. 40. Davis v. A New Brig, Gilpin's D. C. R. 473. The Catharine, 1 Adm. Decis. 104.

(b) An information against a vessel under the act of Congress of May 22, 1794, on account of an alleged exportation of arms, is a case of admiralty and maritime jurisdiction; and an appeal from the District to the Circuit Court, in such a case is sustainable. It is also a civil cause, and triable without the intervention of a jury, under the 9th section of the judicial act. The United States v. La Vengeance, 3 Dall. 297; 1 Cond. Rep. 132. The Sarah, 8 Wheat. 691; 5 Cond. Rep. 472. The Abby, 1 Mason, 360. The Little Ann, Paine's C. C. R. 40.

When the District and State courts have concurrent jurisdiction, the right to maintain the jurisdiction attaches to that tribunal which first exercises it, and obtains possession of the thing. The Robert Fulton, Paine's C. C. R. 620.

(c) Burke v. Trevitt, 1 Mason, 96. The courts of the United States have exclusive jurisdiction of all seizures made on land or water, for a breach of the laws of the United States, and any intervention of State authority, which by taking the thing seized out of the hands of the officer of the United States, might obstruct the exercise of this jurisdiction, is unlawful. Slocum v. Mayberry et al., 2 Wheat. 1; 4 Cond. Rep. 1.

(d) Davis v. Packard, 6 Peters, 41. As an abstract question, it is difficult to understand on what ground a State court can claim jurisdiction of civil suits against foreign consuls. By the Constitution, the judicial power of the United States extends to all cases affecting ambassadors, other public ministers and consuls; and the judiciary act of 1789 gives to the district courts of the United States, exclusively of the courts of the several States, jurisdiction of all suits against consuls and vice consuls, except for certain offences enumerated in this act. Davis v. Packard, 176.

If a consul, being sued in a State court, omits to plead his privilege of exemption from the suit, and afterwards, on removing the judgment of the inferior court to a higher court by writ of error, claims the privilege, such an omission is not a waiver of the privilege. If this was to be viewed merely as a personal privilege, there might be grounds for such a conclusion. But it cannot be so considered; it is the privilege of the country or government which the consul represents. This is the light in which foreign ministers are considered by the law of nations; and our constitution and law seem to put consuls on the same footing in this respect. *Ibid.*

u 2

§ 146                          TITLE 28.—JUDICIAL CODE AND JUDICIARY                          Page

Santa Clara, Santa Cruz, Monterey, and San Benito, which shall constitute the southern division of said district. Terms of the district court for the northern division of the northern district shall be held at Sacramento on the second Monday in April and the first Monday in October, and at Eureka on the third Monday in July; and for the southern division of the northern district, at San Francisco on the first Monday in March, the second Monday in July, and the first Monday in November. The clerk of the district court for the northern district shall maintain an office at Sacramento, in charge of himself or a deputy, which shall be kept open at all times for the transaction of the business of the court. (Mar. 3, 1911, ch. 231, § 72, 36 Stat. 1107; May 16, 1916, ch. 122, 39 Stat. 122; Mar. 1, 1929, ch. 421, 45 Stat. 1424.)

SIMILAR PROVISIONS

Prior to the enactment of the Judicial Code the subject matter of this section was contained in R. S. §§ 531, 572, and 586 were derived from acts July 27, 1866, ch. 280, 14 Stat. 300; Feb. 19, 1864, ch. 11, 13 Stat. 5; Sept. 28, 1850, ch. 86, 9 Stat. 522, and repealed by act Mar. 3, 1911, ch. 231, § 297, 36 Stat. 1168. Repeal of provisions prior to the Judicial Code relating to judicial districts, see note under section 142 of this title.

§ 146. (Judicial Code, section 73.) Colorado; adjournment of terms; deputy marshals and clerks.

The State of Colorado shall constitute one judicial district, to be known as the district of Colorado. Terms of the district court shall be held at Denver on the first Tuesday in May and November, at Pueblo on the first Tuesday in April, at Grand Junction on the second Tuesday in September, at Montrose on the third Tuesday in September, at Durango on the fourth Tuesday in September, and at Sterling on the second Tuesday in June. If at the time of the holding of a term of said court in any year in either of said cities of Grand Junction, Durango, and Sterling, Colorado, there is no business to be transacted by said court, the term may be adjourned or continued by order of the judge of said court in chambers at Denver, Colorado. The marshal and clerk of said court shall each, respectively, appoint at least one deputy to reside at and who shall maintain an office at each of the five said places where said court is to be held by the terms of this section: Provided, That suitable rooms and accommodations for holding court at Sterling are furnished free of expense to the United States. (Mar. 3, 1911, ch. 231, § 73, 36 Stat. 1108; June 12, 1916, ch. 143, 39 Stat. 225; May 29, 1924, ch. 209, 43 Stat. 243.)

SIMILAR PROVISIONS

Prior to the enactment of the Judicial Code the subject matter of this section was contained in R. S. § 531; ch. 147, 19 Stat. 61; Apr. 20, 1880, ch. 58, 21 Stat. 76; Aug. 3, 1886, ch. 848, 24 Stat. 214; and Feb. 16, 1903, ch. 555, 32 Stat. 833, which were repealed by section 297 of the Judicial Code. See note under section 142 of this title.

§ 147. (Judicial Code, section 74.) Connecticut.

The State of Connecticut shall constitute one judicial district to be known as the "district of Connecticut." Terms of the district court shall be held at New Haven on the second Tuesday in February and the third Tuesday in September; at Hartford

on the second Tuesday in May and the first Tue in December; at Norwalk on the third Tuesda April; and at Columbia on the first Tuesday in tember: Provided, That suitable rooms and ac modations shall be furnished for the holdings of court and for the use of the officers of said co Norwalk and Columbia free of expense to the ( ernment of the United States. (Mar. 3, 1911, 231, § 74, 36 Stat. 1108; Feb. 27, 1921, ch. 74, 41 1146; June 15, 1933, ch. 80, 48 Stat. 148.)

SIMILAR PROVISIONS

Prior to the enactment of the Judicial Code the ject matter of this section was contained in R. S. §§ 572 and act June 30, 1879, ch. 49, 21 Stat. 41, which repealed by act Mar. 3, 1911, ch. 231, § 297, 36 Stat 1 See note under section 142 of this title. R. S. §§ and 572 were derived from acts Sept. 24, 1789, ch. 20, 1 Stat. 73; Feb. 6, 1812, ch. 22, 2 Stat. 676.

§ 148. (Judicial Code, section 75.) Delaware.

The State of Delaware shall constitute one judic district, to be known as the "district of Delawar Terms of the district court shall be held at Wilmin ton on the second Tuesdays in March, June, Septe ber, and December. (Mar. 3, 1911, ch. 231, § 75, Stat. 1108.)

SIMILAR PROVISIONS

Prior to the enactment of the Judicial Code the su ject matter of this section was contained in R. S. §§ & 572 and act June 11, 1910, ch. 286, 36 Stat. 466, whi were repealed by act Mar. 3, 1911, ch. 231, § 297, 36 Sta 1168. See note under section 142 of this title. R. §§ 531 and 572 were derived from acts Sept. 24, 1789, ch. § 2, 1 Stat. 73 and May 10, 1852, ch. 33, 10 Stat. 5.

§ 149. (Judicial Code, section 76.) Florida—(a) Div sion into districts.

The State of Florida is divided into two district to be known as the northern and southern district of Florida.

(b) Territory in southern district.

The southern district shall include the territor embraced on the 1st day of July 1937 in the counti of Baker, Bradford, Brevard, Broward, Charlott Citrus, Clay, Collier, Columbia, Dade, De Soto, Du val, Flagler, Glades, Hamilton, Hardee, Hendry, Her nando, Highlands, Hillsborough, Indian River, Lak Lee, Madison, Manatee, Marion, Martin, Monro Nassau, Okeechobee, Orange, Osceola, Palm Beach Pasco, Pinellas, Polk, Putnam, Saint Johns, Sain Lucie, Sarasota, Seminole, Sumter, Suwannee Union, and Volusia.

(c) Terms of southern district.

Terms of the district court for the southern di trict shall be held at Ocala on the third Monday in January; at Tampa on the second Monday in February; at Key West on the first Mondays in May and November; at Jacksonville on the first Monday in December; at Fernandina on the first Monday in April; at Miami on the fourth Monday in April; a Orlando on the first Monday in October; and at Fort Pierce on the first Monday in February: Provided, That suitable rooms and accommodations for hold ing court at Fort Pierce are furnished without ex pense to the United States: Provided further, That suitable rooms and accommodations for holding court at Orlando are furnished without expense to the

PRISON LAW LIBRARY DOES NOT HAVE THIS INFORMATION
SO ALL THE ORIGINAL COLONY STATES ARE       EXHIBIT 4
NOT AVAILABLE TO THIS DEFENDANT.